DINAH SCHNEIDER et al.

*v.*

EMMA SCHMIDT et al.

[Submitted April 28th, 1916.   Decided June 27th, 1916.]

1. In a creditor's suit, evidence *Held* to show that the debtor's equity of redemption in a chattel mortgage had been bought in by the mortgagee at a valid public foreclosure sale.

2. Judgment creditors of a chattel mortgagor are barred by laches from questioning, after six years, the validity of the mortgagee's foreclosure and buying in of the equity of redemption, where the mortgagee could not be placed in the position she occupied at the time of sale.

3. Where an execution levy was made in 1904, but not enforced, and in 1906 and 1911 new levies were made, the 1904 levy was abandoned.

Heard on bill, answer, replication and proofs.

*Mr. William A. Lord,* for the complainants.

*Mr. Alfred F. Stevens,* for the defendants.

FOSTER, V. C.

Complainants seek by this bill to secure an accounting from the defendant Emma Schmidt, as mortgagee in possession, of

the moneys received by her from the rental and operation of a merry-go-round, in order to obtain the payment of a judgment which they hold against her husband, the defendant Charles Schmidt, and one John Huber, the mortgagors.

The facts disclosed by the proofs show that on October 4th, 1904, complainants obtained a decree against said Charles Schmidt and John Huber for the payment of $1,004, besides costs, all of which, with interest, is still due, except $100, which was realized by sale under execution of Charles Schmidt's interest in certain real estate.

About a year previous to the entry of this decree, on November 4th, 1903, Charles Schmidt and John Huber had given a chattel mortgage to Emma Schmidt upon a carousel, with its engine, boiler and equipment, then located at Passaic wharf, in Newark, to secure the payment of $1,500, in one year, with interest, and this chattel mortgage was duly recorded the same day.

On October 31st, 1904, complainants caused execution to be issued on their final decree against Schmidt and Huber, under which the sheriff of Essex county, on November 2d, 1904, levied on the carousel, engine, boiler, &c., covered by the chattel mortgage, but no sale was made under this execution. Shortly thereafter complainants brought suit against Mrs. Schmidt to have her mortgage declared fraudulent, but did not prevail.

Complainants caused *alias* executions to be issued against Schmidt and Huber, under one of which, on December 2d, 1906, the sheriff sold the interest of Charles Schmidt in certain real estate to the complainant Dinah Schneider for the $100 above mentioned.

Defendants claim that about February 14th, 1907, the goods were sold under the chattel mortgage, at public auction, to Mrs. Schmidt for $650, and that after she purchased them she largely replaced the equipment of the carousel, so that the only portions of the original carousel that were left were the rim and a few small figures, when, on August 22d, 1911, by an order of this court, another execution was issued against Schmidt and Huber, under which the sheriff of Essex county levied upon the carousel and other goods, which were then located in Hillside Park, in

the city of Newark, and complainants, on the application of Mrs. Schmidt, were restrained from selling the property under this levy.

On January 15th, 1912, complainants filed a bill in this court against these defendants for substantially the same relief now asked for, on the same ground set forth in the present bill, except that their claim then rested on the levy made in August, 1911, over four years after the alleged chattel mortgage sale in 1907, while, in the present action, the claim is grounded on the execution and levy of November 2d, 1904. That cause came on for final hearing, and, in conclusions filed therein on August 25th, 1913, Vice-Chancellor Emery decided against complainants' contention. *Schneider* v. *Schmidt, 82 N. J. Eq. 81.*

On May 23d, 1914, the present bill was filed, to which defendants filed a plea of *res adjudicata* based on the decree dismissing the former suit. This plea was overruled by Vice-Chancellor Emery (*84 N. J. Eq. 18*), and from the decree therein an appeal was taken, and this decree was affirmed, for the reasons stated in the opinion of the vice-chancellor. *Schneider et al.* v. *Schmidt et al., 85 N. J. Eq. 207.* Defendants thereupon filed their answer in this cause and the matter was brought on for hearing.

The questions to be determined, it is agreed, are the validity of the chattel mortgage sale of the goods, in 1907, and if this sale were not valid, the effect of the execution and levy of 1904, upon the goods themselves, instead of upon the mortgagors' interest therein, and whether the levy of November, 1904, is now in force.

From the testimony of the defendants, Mrs. Schmidt and John Huber, and that of Frederick Beers, it appears that the carousel and other property included in the chattel mortgage were sold to foreclose the mortgage, at public sale, some time in 1907. After the lapse of nine years, none of these witnesses can recall the exact date when the sale took place. The substance of Mrs. Schmidt's testimony is that she thinks she attended the sale in November, 1907; that Mr. Beers, who conducted the sale for her, as her attorney, to foreclose her mortgage, sold the property to her for $650; that Mr. Huber, one of the mortgagors, at-

tended the sale and made a bid of $600, and that this was the only other bid made at the sale. On the morning of the sale she saw posted, on a telegraph pole near the place of sale, the advertisement of the sale, but did not read it, and at the time of the sale she saw the complainant Mr. Schneider leaning over the fence watching the proceedings; and this he does not deny. She testifies the sale took place in a yard where the property was stored.

In this she is corroborated by Mr. Huber and Mr. Beers. Mr. Huber, one of the mortgagors, remembers attending the sale and making an unsuccessful bid on the property, but he cannot recall the date of the sale. Mr. Beers recalls having the sale in charge and of having posted notices of the sale in three different public places; that the notices were similar to the notice produced in evidence, and which he identified as in the handwriting of a stenographer employed in his office at the time, and, according to this copy of the notice, the sale took place on February 14th, 1907. On April 4th, 1907, John Huber gave Mrs. Schmidt a bill of sale for the property, and it is insisted that this circumstance indicates the property was not sold at public sale, if sold at all, until after the delivery of the bill of sale, when the parties may have learned that Mrs. Schmidt could not legally take a bill of sale from her husband.

In the conclusions filed by Vice-Chancellor Emery, in *Schneider* v. *Schmidt, supra,* in which the same questions were involved, and the same contentions made on the part of the complainant under the levy of August, 1911, he found "that the facts proved show that in the early part of 1907, and after default, proceedings took place which were intended to be a public sale under Mrs. Schmidt's chattel mortgage, conducted by her attorney, Edward Beers. An advertisement of the sale, signed by him, has been produced, dated on the 8th day of February, 1907, announcing the sale at No. 11 Lentz avenue, Newark, New Jersey, where the goods were then stored on February 14th, 1907, at ten o'clock A. M. No proof, however, has been made as to the posting or other notice of advertisements, and the only proof relating to the sale is that of the defendants Mrs. Schmidt and Huber, who say, substantially, that it was a public sale at

that place at which the mortgaged chattels were then and there offered for sale, at public auction, and that Mr. Huber made a bid of $600, followed by a bid of $650 made by Mrs. Schmidt, for which the property was sold to her. No bill of sale or other writing appears to have been executed at this time."

All the facts relating to the chattel mortgage sale recited above have been established in the present case, and, in addition, Mr. Frederick Beers, who did not testify in the former case, has been produced as a witness, and he testifies that he recalls having this foreclosure sale of the chattels in charge, and of having posted notices of the sale in three different public places, that the notices were similar to the notices produced in this, and in the former case, and which, as stated, he recognizes to be in the handwriting of a stenographer employed in his office at that time.

Because of the lapse of time, Mr. Beers was unable to recall all the details connected with the advertising and sale of the chattels under the mortgage, but he is very positive that all the requirements as to notice, &c., were complied with; and that Mrs. Schmidt publicly bid in the chattels for less than the amount then owing to her, and his testimony, and the other proven facts, convinces me that Mrs. Schmidt's chattel mortgage was foreclosed by this sale held in February, 1907, and that she became the purchaser of the chattels at this sale for their fair and reasonable value, and has held possession of them since as owner and not as mortgagee in possession.

Her acts of ownership after this sale are evidenced by the execution and recording of a chattel mortgage upon the chattels, given by Mrs. Schmidt in July, 1907, by the contracts she made for operating the carousel in an amusement park, and by the management of the carousel and the retention of the income therefrom, without any claim being made therefor, or for an accounting by the mortgagors, or either of them.

If any doubt existed regarding the chattel mortgage sale having taken place in 1907, I should feel constrained to reach the same conclusion, because of the laches or failure of the complainant to set up until the former suit was heard, in 1913, any attack upon the validity of that sale.

In *Schneider* v. *Schmidt, supra,* Vice-Chancellor Emery held that Huber and Schmidt were partners, that the bill of sale given by Huber to Mrs. Schmidt, in April, 1907, transferred to her the owner's equity in the chattels, and that she became the owner by reason thereof, independently of the chattel mortgage sale of February, 1907 (because this bill of sale was made prior to the levy of August, 1911, which was involved in that case), and, as a result of his determination of her ownership in that case, Mrs. Schmidt disposed of what remained of the mortgaged chattels, by exchanging them for a new machine which cost her about $10,000, and on which price she was credited with $1,000, for the value of the mortgage chattels, and has paid an additional $1,000 on account of the price of the new machine, and has obligated herself to pay the balance of about $8,000, and has secured the payment of this amount by a mortgage upon the new chattels.

If the sale of 1907 were now held to be invalid, the possession of the original chattels could not be obtained—they are owned by a stranger and are out of the state. An accounting of the receipts therefrom could not place Mrs. Schmidt in the position she occupied in 1907, in respect to the amount owing her; or the security which she had held therefor, nor would it relieve her from the obligations she has assumed in the purchase of the new carousel.

This condition is the result of complainants' laches, or failure to assert their rights, if they had any, under the execution and levy of November, 1904, until the commencement of this suit in 1914.

Their claim must be regarded as a stale one, and a court of equity does not look with favor upon the case of a complainant who has remained inactive for years, during which time innocent parties whose interests are jeopardized by his dormant rights have gone on in fancied security to spend money in improvements, when conditions cannot be reinstated, and when the truth has been necessarily obscured by lapse of time; and a court of equity always refuses to aid stale demands when the party has slept upon his rights. *DeGrauw* v. *Mechan, 48 N. J. Eq.* (at *p. 224*), and cases cited.

The bill alleges that in addition to the execution and levy of 1904, other executions were issued and levies made thereunder, including one in 1906, under which Schmidt's interest in certain real estate was sold, as stated, and the one in 'August, 1911, disposed of by Vice-Chancellor Emery's conclusions.

No reason has been suggested why the levy of November, 1904, if it were in force, was not included in the action in which the levy of 1911 was involved. Under it complainant's position was much stronger than under the levy of 1911. The levy of 1904 was made nearly three years before the chattel mortgage sale, and the rights of complainants thereunder were entirely different from their rights under the levy made subsequent to this sale, and it is therefore not unreasonable to assume that the levy of November, 1904, had been abandoned when the executions and levies of 1906 and 1911 were issued and made.

It is a general rule that, when, after the making of a levy, there is no attempt to sell the property within a reasonable time, and it is permitted to remain in the possession of the defendant, or from any course of conduct the inference must be reached, that the plaintiff did not, or does not intend to enforce his levy by coercing through its aid the payment of his demand, the conclusion cannot be resisted either that the levy was without good faith in its inception, or that the plaintiff has concluded, for some reason satisfactory to himself, to abandon it. *Freem. Ex.* (*3d ed.*) § *271.*

When their first action to have the mortgage declared fraudulent was decided against them in 1908, complainants did not attempt to enforce their levy of 1904, but waited instead until August, 1911, and then had a new levy made upon the chattels, having in the meantime sold Schmidt's interest in the real estate under the execution of 1906. These levies, made subsequent to one of 1904, and the other executions which the bill alleges were issued, justify the conclusion that complainants abandoned the levy of 1904, when it had accomplished its purpose of keeping them in court in the original suit thereby to attack the validity of the mortgages held by Mrs. Schmidt.

My conclusion is that complainants having abandoned the levy of 1904, have no standing to attack the validity of the

chattel mortgage sale of 1907; that these chattels were sold at the sale to Mrs. Schmidt, that she then became the owner of them, and has since held the same as owner, and not as mortgagee in possession, and that it is now too late for complainants to question the validity of her title.

Decree will be advised dismissing the bill, with costs.